UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROCKY MOUNTAIN HOLDINGS, LLC, LC,
C.J. CRITICAL CARE TRANSPORTATION
SYSTEMS OF FLORIDA, INC. ,

Plaintiffs,

-vs-                                                      Case No.  6:08-cv-686-Orl-19KRS

BLUE CROSS AND BLUE SHIELD
OF FLORIDA, INC., HEALTH OPTIONS, INC.,

Defendants.

_____

# ORDER

This case comes before the Court on the Motion to Remand by Plaintiffs (Doc. No. 14, filed

May 27, 2008) and the Memorandum of Law in Opposition by Defendants (Doc. No. 18, filed June

13, 2008).

A Florida statute requires HMOs to pay emergency healthcare providers that are not

affiliated with the plan a certain rate for their services.[1]  This case presents the question of whether

state law claims under the statute are deemed issues of federal law, for purposes of removal to

federal court, because the majority of claims at issue involved participants in plans covered by the

Employment Retirement Income Security Act ("ERISA").

---

[1]     "HMO" is the commonly used acronym for "Health Maintenance Organization," a
type of managed care organization that provides healthcare coverage through contracts with
healthcare providers.  *See* Fla. Stat. § 641.19 (2008) (Florida's statutory definition of a HMO).
Unlike traditional insurance, HMOs typically limit reimbursement to services provided by their
contracted healthcare providers.  *See* Mark A. Hall, *The Theory and Price of Disclosing HMO
Physician Incentives*, 56 Law & Contemp. Probs. 207 (2002).

**Background**

Plaintiffs Rocky Mountain Holdings, LLC, LC and C.J. Critical Care Transportation Systems of Florida provide emergency air services by transporting patients to healthcare facilities. (Doc. No. 30 ¶¶ 2-3, filed Aug. 7, 2008.) Defendant Health Options, Inc. ("HOI") operates the HMO plan that is the subject of this case, and Defendant Blue Cross and Blue Shield of Florida ("Blue Cross") is its parent company. (*Id.* ¶¶ 4-5.) Plaintiffs are not affiliated with HOI's health plan in any manner. (*Id.* ¶ 8.) Nevertheless, section 641.513 of the Florida Statutes requires healthcare providers to render emergency medical services to HMO participants, even when the provider has no contractual relationship with the HMO. In such cases, the statute requires the HMO to reimburse providers with the "usual and customary provider charges for similar services in the community where the services were provided . . . ." Fla. Stat. § 641.513(5)(b). Plaintiffs contend that they have provided ambulance services for Defendants' subscribers on numerous occasions, but Defendants reimbursed them at a rate below the usual and customary charges. (*Id.* ¶ 11.)

Plaintiffs originally filed this lawsuit in state court. Soon after, Defendants removed to this Court, contending that federal subject matter jurisdiction exists under 28 U.S.C. § 1331, for issues of federal law, and 29 U.S.C. § 1132(e), for issues relating to ERISA specifically.[2] (Doc. No. 1, filed Apr. 28, 2008.)

**Analysis**

The burden of establishing federal subject matter jurisdiction rests on the party attempting to invoke it. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Because federal

---

[2] These two jurisdictional statutes appear to be treated as identical for purposes of determining whether federal subject matter jurisdiction exists in an ERISA case. *See, e.g.*, *Peacock v. Thomas*, 516 U.S. 349, 354 (1996).

courts are of limited jurisdiction, district courts should strictly construe the requirements of 28 U.S.C. § 1441 (removal jurisdiction) and remand all cases in which jurisdiction is doubtful. *Shamrock Oil & Gas Corp. v. Sheetz*, 313 U.S. 100, 109 (1941); *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001).

One type of federal jurisdiction exists when a federal question is presented. 28 U.S.C. § 1331 (2006). The general test for determining the existence of a federal question is whether the question appears on the face of a well-pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A federal defense, such as preemption by federal law, does not independently allow for removal. *Id* at 392-93. However, there exists an "independent corollary to the well-pleaded complaint rule known as 'complete preemption' or 'super preemption,' which creates federal-question jurisdiction when the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."[3] *Sheridan Healthcorp., Inc. v. Neighborhood Health*, 459 F. Supp. 2d 1269, 1272 (S.D. Fla. 2006) (quoting *Caterpillar, Inc.*, 482 U.S. at 393) (internal quotation marks omitted). Courts consider ERISA to be a statute with such an "extraordinary" force. *Id.* When

---

[3]     As explained by the Eleventh Circuit:

> Super-preemption arises from Congress's creation of a comprehensive remedial scheme in 29 U.S.C. § 1132 for loss or denial of employee benefits. When Congress comprehensively occupies a field of law, "any civil complaint raising this select group of claims is necessarily federal in character" and thus furnishes subject-matter jurisdiction under 28 U.S.C. § 1331. Therefore, federal courts have subject-matter jurisdiction over state-law claims that have been super-preempted, and defendants may remove to federal court those actions that contain such claims.

*Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212-13 (11th Cir. 1999) (internal citations omitted).

super-preemption applies, the plaintiff's state law claims are "re-characterized" as federal claims under ERISA, and the case is removed to federal court. *Speciale v. Seybold*, 147 F.3d 612, 615 (7th Cir. 1998).

According to the Eleventh Circuit, a state law claim is super-preempted if it meets the following four conditions: (1) the plaintiff's complaint involves a relevant ERISA plan; (2) the plaintiff has standing to sue under the ERISA plan; (3) the defendant is an ERISA entity; and (4) the complaint seeks compensatory relief akin to what is available under 29 U.S.C. § 1102(a). *Butero*, 174 F.3d at 1212.

Several important, relevant points do not appear to be in dispute. First, the parties do not dispute that Plaintiffs' claims are state law causes of action asserted by healthcare providers, and they do not dispute that at least some of the patients that Plaintiffs airlifted were subscribers to HMO plans covered by ERISA.[4]  The parties also agree that the concept of super-preemption is determinative of whether federal jurisdiction exists in this case. Their dispute concerns: (1) whether healthcare provider claims in this case are generally subject to preemption (Doc. No. 14 at 4-5); (2) the application of the four-factor test for super-preemption, particularly the issue of whether Plaintiffs have standing to sue under an ERISA plan (*id.* at 6-8; Doc. No. 18 at 7-12); and (3) whether ERISA's "savings clause," which provides that the Act should not be "construed to exempt or relieve any person from any law of any state which regulates insurance," saves Plaintiffs' claims

---

[4]      As a general matter, ERISA governs employer-sponsored health plans. 29 U.S.C. § 1003(a).  Defendants' Notice of Removal and Memorandum in Opposition to Plaintiffs' Motion to Remand estimate that slightly over 81% of the claims at issue in this case involved a plan governed by ERISA.  (Doc. No. 1 at 5; Doc. No. 18 at 4-5.)

from super-preemption (Doc. No. 14 at 8-9; Doc. No. 18 at 13-15).  The first two matters are determinative of the issue presented and will be addressed below.

I.      **Preemption and State Law Claims by Providers**

Plaintiffs first argue that state law claims brought by healthcare providers against insurers affect ERISA plans too tenuously to be preempted.  (Doc. No. 14 at 4 (citing *Lordmann Enter., Inc. v. Equicor*, 32 F.3d 1529, 1533 (11th Cir. 1994)).)   They are correct.   "Courts have, with near unanimity, found that independent state law claims of third party healthcare providers are not preempted by ERISA."  *Med. & Chirurgical Facility of the State of Md. v. Aetna U.S. Healthcare, Inc.*, 221 F. Supp. 2d 618, 619-20 (D. Md. 2002) (citing *In Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 606 (8th Cir. 1996); *Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir.1995); *Lordmann Enters.*, 32 F.3d at 1529; *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc.*, 944 F.2d 752 (10th Cir. 1991); *Mem. Hosp. Sys. v. Northbrook Life Ins.* Co., 904 F.2d 236 (5th Cir. 1990)).

This outcome is dictated by the policy behind ERISA.  As explained in a case from the Southern District of Florida:

> The policy arguments set forth in *Memorial Hospital* [by the Fifth Circuit] and adopted by the [Eleventh Circuit] in *Lordmann Enterprises* elucidate the wisdom of this result.  First, preemption of provider contract claims would "defeat rather than promote" ERISA's goal to "protect the interests of employees and beneficiaries covered by benefit plans." *Lordmann Enters.*, 32 F.3d at 1533. The [c]ourt theorized that as a result of preemption, health care providers could no longer rely as freely on the representations of insurers and would therefore act to protect themselves by denying care or raising fees.  *Id.*  Second, health care providers are not within the scope of ERISA.  *Id.*  Although employer and employees traded their right to bring a state cause of action in exchange for the benefits of ERISA, the statute does not provide a cause of action for health care providers who treat ERISA participants.  In short, preemption of state law claims would leave health care providers with no viable civil remedy.  *Id.* at 1533-34.

*In re Managed Care Litig.*, 135 F. Supp. 2d 1253, 1268 (S.D. Fla. 2001), *quoted in Aetna U.S. Healthcare, Inc.*, 221 F. Supp. 2d at 620-21.

It is important to note that the concepts of preemption and super-preemption differ in some respects. "Preemption" as discussed in most of the above cases concerns what the Eleventh Circuit has more specifically described as "defensive" preemption.[5] *Butero*, 174 F.3d at 1212. Defensive preemption arises through ERISA's express preemption provision, 29 U.S.C. § 1144(a), "provides only an affirmative defense to certain state law claims," and has no bearing on the existence of federal jurisdiction. *Butero*, 174 F.3d at 1212. Generally, defensive preemption applies when state laws "relate" to an employee benefit plan covered by ERISA. 29 U.S.C. § 1144(a). By contrast, super-preemption arises by virtue of ERISA's civil enforcement provision, 29 U.S.C. § 1102(a), does not provide an affirmative defense and concerns the existence of federal jurisdiction. *Butero*, 174 F.3d at 1212.

Nevertheless, if healthcare provider claims escape defensive preemption by ERISA, the rationale for applying super-preemption disappears. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1281 & n.14 (11th Cir. 2005) ("[I]f it appears that a claim is not even defensively preempted, then it will not be completely preempted either."); *Aetna U.S. Healthcare, Inc.*, 221 F. Supp. 2d at 619-620; *see also* Donald T. Bogan, *ERISA: The Savings Clause, § 502 Implied Preemption, Complete Preemption, and State Law Remedies*, 42 Santa Clara L. Rev. 105, 161-174 (2001). Just as provider claims do not "relate" to employer health plans under ERISA's express preemption

---

[5]     This type of preemption has also referenced as "conflict preemption." *Aldermand v. SmartCity Telecomm., LLC*, No. 6:06-cv-1913-Orl-31JGG, 2007 WL 570011, at *2 n.2 (M.D. Fla. Feb. 20, 2007).

provision, Congress has not shown an intent to replace an entire category of state law provider claims by creating a federal cause of action.  In fact, ERISA is silent about the right of providers to assert claims against health plans.  Thus, at the outset, it appears that the Plaintiffs' claims fall within the category of claims that the Eleventh Circuit has deemed too tenuously related to ERISA to be preempted in any capacity.[6]

## II.     The Four-Part *Butero* Test

The application of the Eleventh Circuit's four-part *Butero* test confirms that independent state law claims of healthcare providers are not subject to ERISA super-preemption.  As explained above, a state law claim is super-preempted if it meets the following four conditions: (1) the plaintiff's complaint involves a relevant ERISA plan; (2) the plaintiff has standing to sue under the ERISA plan; (3) the defendant is an ERISA entity; and (4) the complaint seeks compensatory relief akin to what is available under 29 U.S.C. § 1102(a).  *Butero*, 174 F.3d at 1212.  Critically, the providers in this case lack standing to sue under ERISA, and their Complaint does not seek compensatory relief akin to what is available under 29 U.S.C. § 1102(a).

### A.     Standing

"[F]or a state law claim to be completely preempted and re-characterized as a federal claim, the plaintiff must have standing to sue under the relevant ERISA plan." *Regency Hosp. Co. of S. Atlanta, L.L.C. v. United Healthcare of Ga.*,  403 F. Supp. 2d 1221, 1226 (N.D. Ga. 2005) (citing

---

[6]     This is not to say that provider claims are never subject to defensive preemption or super-preemption.  Several courts have found that a provider gained standing to sue under 29 U.S.C. §1102(a) because the patient effectively assigned his or her right to recover benefits to the provider, and the provider thereafter asserted those rights.  *E.g.*, *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001) (citing *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001)).   Indeed, Defendants have raised this issue, and it will be analyzed below.

*Butero*, 174 F.3d at 1212).  Under the Act, only participants or beneficiaries have standing to assert a claim for benefits from an "employee welfare benefit plan."  29 U.S.C. § 1132(a)(1)(B); *Hobbs*, 276 F.3d at 1241 ("ERISA's civil enforcement section permits two categories of individuals to sue for benefits under an ERISA plan--plan beneficiaries and plan participants.").  ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).  A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  *Id.* § 1002(8).

Defendants argue that Plaintiffs have standing to sue because the ERISA beneficiaries have effectively "assigned" their rights to Plaintiffs  (Doc. No. 18 at 11-12).  Plaintiffs emphasize that their claims are based on a Florida statute; therefore, an assignment of rights is irrelevant.  (Doc. No. 14 at 6-8.)

Plaintiffs have the better argument.  As a general matter,  "[h]ealthcare providers . . . are not considered 'participants' or 'beneficiaries' under ERISA.  *Regency Hosp. of S. Atlanta, L.L.C.*, 403 F. Supp. 2d at 1226 (citing *Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294 (11th Cir. 2004)).  However, ERISA contains no language preventing "derivative standing based upon an assignment of rights from ERISA participants or beneficiaries." *Id.* (quoting *Physicians Multispecialty Group*, 371 F.3d at 1294) (internal quotation marks omitted).  "Thus, a healthcare provider may acquire derivative standing by obtaining a written assignment of the right to payment of medical benefits from a beneficiary or participant, provided that the plan does not forbid assignment of benefits."  *Id.*  However, to confer standing to sue under ERISA, the

assignment of rights must be relevant to the claims being litigated. *Guerriere v. Aetna Health, Inc.*, No. 8:07-cv-1439-T-23TBM, 2007 WL 3334346, at *2 (M.D. Fla. Nov. 8, 2007) (finding that a purported assignment was insufficient to confer standing because "[e]ven if the plaintiff obtained an assignment of benefits, the plaintiff [did] not rely on the assignment and [did] not need to rely on the assignment to prosecute his state law claim").

Defendants present a sample of twenty claim forms which indicate that (1) an existing "signature on file" assigns the patient's medical benefits to one of the Plaintiffs; or (2) the patient was unable to sign. (Doc. No 19 at 5-6, 8-27.)  However, even if this evidence is sufficient to prove an assignment of benefits, such an assignment would be insufficient to make Plaintiffs "beneficiaries" in this case.  As Plaintiffs repeatedly emphasize, they are not attempting to stand in the shoes of the patients, and their claims are unrelated to the rights of the patients.  Rather, Plaintiffs are suing under a Florida statute that operates independently of the terms of the health plan.[7]  Thus, Plaintiffs are not "beneficiaries" within the meaning of 29 U.S.C. § 1002(8).

**B.     Relief Akin to Section 1102(a)**

Defendants also argue that Plaintiffs' claims relate to the failure to pay bills for services provided to ERISA plan beneficiaries. (Doc. No. 1 at 4-10; Doc. No. 18 at 10.)  In response, Plaintiffs emphasize that their claims are brought under a Florida statute and are unrelated to terms of any health plan.  (Doc. No. 14 at 5-7.)

---

[7]     Plaintiffs may plead their claims in a way that purposefully avoids federal jurisdiction. *Caterpillar, Inc.*, 482 U.S. at 395; *Hill v. BellSouth Telecomm., Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004) ("[T]he plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." (citations omitted)).

Again, Plaintiffs make the more persuasive argument. This case cannot accurately be characterized as a challenge to a refusal to pay benefits under an ERISA plan. *Aetna U.S. Healthcare, Inc.*, 221 F. Supp. 2d at 621 (analyzing an analogous Maryland statute and concluding that claims under it were not challenges to the denial of ERISA benefits). Similar to the Eleventh Circuit's observation in *Cotton*, the present claims differ from cases where "there were actual decisions denying benefits under the relevant plan." *Cotton*, 402 F.3d at 1291. Thus:

> When an insurer makes such a decision, it is plainly wearing its fiduciary hat, and the beneficiary may challenge the correctness of the decision according to the terms of the ERISA plan. Here, in contrast, as the district court correctly concluded, the terms of the plan documents "are clear and unambiguous," and the plaintiffs are not entitled to relief under them. Nor do their allegations, if properly characterized and understood, seek relief under the plan or challenge any action by [the defendant] in its fiduciary capacity. This distinguishes the case from those in which we reasoned that the plaintiff was essentially challenging an insurer's denial of benefits.

*Id.* Likewise, Defendants have already determined that the patients' claims were covered by the plan. (Doc. No. 18 at 12; Doc. No. 30 ¶¶ 8-11.) The issue is whether Defendants reimbursed the providers at a rate consistent with Florida law. Thus, Plaintiffs, as healthcare providers, are not challenging the denial of benefits under an ERISA plan. *Aetna U.S. Healthcare, Inc.*, 221 F. Supp. 2d at 621 ("What is at issue is the amount of payment, and the source for that determination is the statutes, not the HMO plans.").

Accordingly, Plaintiffs would lack standing to sue under an ERISA plan, and consequently there is no basis for federal subject matter jurisdiction. *Butero*, 174 F.3d at 1212.[8]

---

[8]  Because the Court concludes that federal subject matter jurisdiction is foreclosed by the Eleventh Circuit's case law generally, and under the four-part *Butero* test specifically, it is unnecessary to determine whether ERISA's savings clause applies.

**Conclusion**

The Motion to Remand by Plaintiffs (Doc. No. 14, filed May 27, 2008) is **GRANTED**.  The

Clerk is directed to **REMAND** this case and close the case file.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 13, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record